**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SE PROPERTY HOLDINGS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 11-0219-WS-N** |
| | ) | |
| **JAY O. STRADLEY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on plaintiff's Motion for Summary Judgment (doc. 20), and its supporting exhibits and memorandum of law.[1]  Defendant, by and through counsel, has not responded to the Motion, except to indicate that he does not oppose it.  (Doc. 35.)

**I.    Background.**

Plaintiff, SE Property Holdings, LLC, brought this action against defendant, Jay O. Stradley, alleging that Stradley had defaulted on various loan and guaranty obligations.[2]  Federal jurisdiction was properly invoked pursuant to 28 U.S.C. § 1332, inasmuch as plaintiff is an Ohio citizen (and plaintiff's predecessor was a Florida citizen) for diversity purposes (see doc. 30,

---

[1]      The Court's review of these materials has been hampered by plaintiff's non-compliance with the Rule 16(b) Scheduling Order's requirement that "[i]f a party's exhibits in support of or in opposition to a motion exceed 50 pages in the aggregate, then that party must deliver a courtesy hard copy of those exhibits to the Judge's chambers by mail or hand delivery." Doc. 14, ¶ 13(c).  Hard copies would have been particularly beneficial here, given the numerous loans, agreements, extensions and modifications at issue, as well as the detailed loan history records accompanying same.  Nonetheless, in its discretion and to avoid delay, the Court will consider these materials as filed, notwithstanding omission of the required hard copies.

[2]      Initially, the named plaintiff was Vision Bank; however, SE Property was later substituted as the party plaintiff pursuant to Rule 25(c), Fed.R.Civ.P., based on plaintiff's showing of a transfer in interest, to-wit:  That Vision Bank's interest in this lawsuit had been transferred to SE Property pursuant to a merger.  To avoid confusion and in the interest of consistency, plaintiff will be generically referred to herein as the "Bank."

Exh. A, at ¶¶ 3-4), defendant is an Alabama citizen, and the amount in controversy greatly exceeds the $75,000 jurisdictional threshold.

The Complaint (doc. 1) alleges that Stradley is in default of seven different promissory notes that he had executed in favor of the Bank during the period of 2006 to 2008 pursuant to certain loan transactions.  According to the Complaint, Stradley agreed and acknowledged that payment was due and/or that he was in default on each of those notes; however, he neither made payments on the notes when they came due, nor paid sums due and owing in December 2010 pursuant to a negotiated forbearance agreement between the parties.  The Complaint further alleges that each of those notes included specific provisions entitling the Bank to collect its reasonable expenses (including but not limited to reasonable attorney's fees) incurred in enforcing its right to payment.

In addition to the seven promissory notes, the Complaint states that Stradley executed a personal, unlimited and unconditional continuing guaranty agreement in the Bank's favor in or about December 2007, for the purpose of inducing the Bank to issue a loan to Gulf Coast Builders & Development, LLC ("Gulf Coast Builders"), as to which Stradley is a member.[3] Well-pleaded factual allegations in the Complaint are that Stradley later agreed that this loan was either due or in default, promised to make monthly payments toward the indebtedness, and then failed to do so.  Stradley's continuing guaranty included a provision under which he agreed to pay the Bank's reasonable expenses (including attorney's fees) in enforcing its rights under that agreement.

Finally, the Complaint identifies an overdraft protection agreement that Stradley executed in 2003, then subsequently breached by failing to make payment when due and owing under same.  Like the other agreements at issue in this litigation, the overdraft protection agreement contained a provision under which the Bank could recover its reasonable expenses (including attorney's fees) incurred in collecting the debt.

On the basis of these allegations, the Bank asserts nine causes of action against Stradley for breach of contract (one for each loan, guaranty agreement, or overdraft protection agreement

---

[3]     The record reflects that Stradley is a real estate broker, and that he formed Gulf Coast Builders for his son to engage in the business of "doing bush hog work and driveway work and tree clearing, brush clearing."  (Stradley Dep. (doc. 23, Exh. B), at 31, 56.)  Stradley testified that he was the only member of Gulf Coast Builders.  (*Id.* at 32.)

which Stradley allegedly breached).[4]  In each of those causes of action, the Bank seeks an award of unpaid principal and interest, attorney's fees, costs of collection, and any other damages.

Upon being served with process, Stradley appeared in this action by and through counsel, filed an Answer (doc. 11) and participated in the discovery process.[5]  After the close of discovery, the Bank filed a Motion for Summary Judgment, contending that there are no genuine issues of fact as to Stradley's status as debtor and/or guarantor under the various loans, or his default under same.  The Bank requested that summary judgment be granted in its favor as to all claims, with leave to prove attorney's fees and expenses before entry of final judgment.  Stradley did not respond to the Rule 56 Motion within the timeframe established via briefing schedule; however, he eventually notified the Court that "[t]he defendant does not oppose the plaintiff's motion for summary judgment."  (Doc. 35, at 1.)  The unopposed Motion for Summary Judgment is now taken under submission.

---

[4]     In a tenth cause of action, the Bank claimed that an accounting "of any and all receipts, disbursements and/or payments related to the Loans in Gulf Coast Builders' and Stradley's possession should be made available to the Bank."  (Doc. 1, ¶ 167.)  Plaintiff does not pursue that claim via its Motion for Summary Judgment, which identifies neither facts nor law to support a legal right to an accounting.  At any rate, the Court perceives no valid reason for ordering an accounting at this time, given the availability of post-judgment discovery to assist the Bank in discerning Stradley's assets.  *See Whitney Nat'l Bank v. Flying Tuna, LLC*, 2011 WL 2669450, *3 (S.D. Ala. July 7, 2011) ("Insofar as Whitney desires an inventory and an accounting of collateral, there is no reason to believe that post-judgment discovery will not be adequate (if needed) to furnish that information to Whitney and facilitate its collection efforts at an appropriate time."); *Vision Bank v. Rookery, LLC*, 2012 WL 468351, *3 n.3 (S.D. Ala. Feb. 14, 2012) (because of imminent judgment against defendant, it was "not clear how an accounting would benefit the plaintiff").  For all of these reasons, Count Ten (Request for Accounting) is **dismissed**, without prejudice to plaintiff's ability to pursue post-judgment discovery against Stradley in accordance with applicable procedural rules as needed to execute on the forthcoming money judgment.

[5]     Stradley's Answer contained admissions of many predicate facts on which the Complaint was based, including the following: (i) admissions that there are loans "more or less similar to those described" in the Complaint, and "that there are balances due on each loan" (doc. 11, at 2); and (ii) admissions "that the defendant and Gulf Coast Builders have received, in the aggregate, a large sum of money pursuant to the loans," and that "some of the loans advanced have not been repaid" (*id.* at 3).  From a fair reading of the Answer, it appeared that Stradley rested his defense in large part on a theory that "[t]he plaintiff was not qualified to do business in the State of Alabama" during the relevant period and that Alabama Code § 10A-2-15.02(a) precluded the Bank from enforcing loan documents entered into during that time.  (*Id.* at 4.)

## II.   Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

As noted, Stradley has stated that he does not oppose the Motion for Summary Judgment. "Summary judgment is not automatically granted by virtue of a non-movant's silence."  *Williams v. Aircraft Workers Worldwide, Inc.*, --- F. Supp.2d ----, 2011 WL 2111992, *3 (S.D. Ala. May 24, 2011).  "Even in an unopposed motion [for summary judgment], … the movant is not absolve[d] … of the burden of showing that it is entitled to judgment as a matter of law."  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citations and internal quotation marks omitted); *see also United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion … [and] ensure that the motion itself is supported by evidentiary materials."); Commentary to 2010 Amendments to Fed.R.Civ.P. 56(e) ("summary judgment cannot be granted by default even when there is a complete failure to respond to the motion"). That said, a court is not obligated to read minds and cannot construct arguments or theories that a

party has failed to raise in briefing.[6]  As such, Stradley's election not to proffer argument, evidence or authority in response to plaintiff's Rule 56 Motion is at his peril.  And Stradley's failure to brief his affirmative defense under Alabama's corporate door closing statute will not be remedied by this Court unilaterally "filling in the blanks" on his behalf.[7]

**III.    Analysis.**

Upon review of plaintiff's summary judgment submission, the Court is satisfied that the Bank has made the requisite showing that it is entitled to judgment as a matter of law as to many of the asserted claims.  In particular, the record establishes that with respect to most of the notes and agreements at issue, Stradley executed the document in favor of the Bank, then subsequently defaulted on the note, agreement and/or forbearance agreements pertaining to same by failing to pay the Bank amounts due and owing.[8]

**A.    *The Promissory Notes.***

Going on a note-by-note basis, the record reveals the following:  On October 17, 2006, Stradley executed Note 97918 in favor of the Bank in the principal amount of $200,000, which Note was subsequently renewed and extended on multiple occasions.  Note 97918, as renewed and extended, reached maturity without payment by Stradley.  (Harmon Aff. (doc. 22, Exh. A),

---

[6]      *See, e.g., Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("[D]istrict courts cannot concoct or resurrect arguments neither made nor advanced by the parties."); *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (noting that a litigant "cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions") (citation omitted).

[7]      *See, e.g., Day v. McDonough*, 547 U.S. 198, 205, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006) (recognizing that district courts are under no obligation to raise non-jurisdictional defenses *sua sponte*); *Vision Bank v. Merritt*, 2010 WL 5474161, *4 (S.D. Ala. Dec. 8, 2010) ("If Merritt wishes to pursue such a legal theory, it is incumbent on him to perform the necessary research and develop that argument, rather than stating it in the vaguest of outlines and expecting this Court to fill in the gaps."); *Federal Ins. Co. v. County of Westchester*, 921 F. Supp. 1136, 1139 (S.D.N.Y. 1996) ("Under the adversary system, it is counsel's responsibility to explain why these points have legal merit; the Court does not serve as counsel's law clerk.").

[8]      Neither the authenticity of these agreements nor Stradley's assent to same is in dispute.  After all, in his deposition, Stradley acknowledged having signed the promissory notes, forbearance agreements, guaranties and overdraft protection agreement appended to the Complaint.  (Stradley Dep. (doc. 23, Exh. B), at 18-20.)

¶¶ 4-6.)  The Bank's records reflect that the present unpaid principal balance on Note 97918 is $97,179.19.  (*Id.*, ¶ 15 & Exh. 4.)  Pursuant to the renewal of the Note on October 17, 2007, Stradley agreed that "interest will accrue at the rate of 18.00% per year on the balance of this note not paid at maturity, including maturity by acceleration."  (Doc. 1, Exh. E-2.)  On that basis, plaintiff seeks recovery of the unpaid principal amount, plus post-default interest beginning on December 24, 2010 and accruing at the rate of 18% per annum.

On January 12, 2006, Stradley executed Note 89257 in favor of the Bank in the principal amount of $60,000, which Note was subsequently renewed and extended on multiple occasions. Note 89257, as renewed and extended, was not immediately paid by Stradley.  (Harmon Aff., ¶¶ 16-18.)  However, the Bank's own records show that the entire principal amount of Note 89257 was paid in full as of October 27, 2010.  (*Id.*, ¶ 21 & Exh. 5.)  And defendant testified that this loan "had been paid off."  (Stradley Dep., at 21.)  This uncontroverted fact belies plaintiff's attestation that under Note 89257 the total indebtedness includes "Nine Hundred Nineteen and 72/100 Dollars ($919.72) in post-default interest from December 24, 2010 until January 20, 2012 at a rate of 18%."  (*Id.*, ¶ 21.)[9]  Plaintiff does not explain how, if the principal balance were $0.00 as of October 27, 2010, nearly $1,000 in post-default interest could have accumulated on that zero balance beginning two months after the loan was paid in full.  As plaintiff's records undercut its claims to relief on Note 89257, no damages will be awarded on Count Six of the Complaint.

On January 3, 2007, Stradley executed Note 99570 in favor of the Bank in the principal amount of $175,000, which Note was subsequently renewed and extended on multiple occasions. Note 99570, as renewed and extended, reached maturity without payment by Stradley.  (Harmon Aff., ¶¶ 23 – 26.)  The Bank's records reflect that the present unpaid principal balance on Note 99570 is $104,192.37.  (*Id.*, ¶ 32 & Exh. 8.)  Pursuant to the renewal of the Note on January 3, 2008, Stradley agreed that "interest will accrue at the rate of 18.00% per year on the balance of this note not paid at maturity, including maturity by acceleration."  (Doc. 1, Exh. G-2.)  On that

---

[9]     Plaintiff makes the same argument in its summary judgment brief, to-wit: "This figure includes No Dollars ($0.00) in principal; Nine Hundred Nineteen and 72/100 Dollars ($919.72) in post-default interest from December 24, 2010 until January 20, 2012 at a rate of 18%."  (Doc. 24, at 10.)

basis, plaintiff seeks recovery of the unpaid principal amount, plus post-default interest beginning on December 24, 2010 and accruing at the rate of 18% per annum.

On April 24, 2007, Stradley executed Note 102563 in favor of the Bank in the principal amount of $233,000.  Note 102563, as renewed and extended, reached maturity without payment by Stradley.  (Harmon Aff., ¶¶ 34-36.)  The Bank's records reflect that the present unpaid principal balance on Note 102563 is $233,000.  (*Id.*, ¶ 39 & Exh. 9.)  By the terms of the original Note, Stradley agreed that "interest will accrue at the rate of 18.00% per year on the balance of this note not paid at maturity, including maturity by acceleration."  (Doc. 1, Exh. F-1.)  On that basis, plaintiff seeks recovery of the unpaid principal amount, plus post-default interest beginning on December 24, 2010 and accruing at the rate of 18% per annum.

On March 18, 2008, Stradley executed Note 301300 in favor of the Bank in the principal amount of $100,000.  Note 301300 reached maturity without payment by Stradley.  (Harmon Aff., ¶¶ 48-49.)  The Bank's records reflect that the present unpaid principal balance on Note 301300 is $78,150.00.  (*Id.*, ¶ 58 & Exh. 14.)  By the terms of the original Note, Stradley agreed that "interest will accrue at the rate of 18.00% per year on the balance of this note not paid at maturity, including maturity by acceleration."  (Doc. 1, Exh. H.)  On that basis, plaintiff seeks recovery of the unpaid principal amount, plus post-default interest beginning on December 24, 2010 and accruing at the rate of 18% per annum.

On June 25, 2008, Stradley executed Note 301873 in favor of the Bank in the principal amount of $1,123,993.83.  Note 301873 was extended; however, Stradley defaulted under the terms of that note in December 2010.  (Harmon Aff., ¶¶ 60-62.)  The Bank's records reflect that the present unpaid principal balance on Note 301873 is $762,508.21.  (*Id.*, ¶ 70 & Exh. 18.)  The Note reflected that "interest will accrue at the rate of 18.00% per year on the balance of this note not paid at maturity, including maturity by acceleration."  (Doc. 1, Exh. A.)  On that basis, plaintiff seeks recovery of the unpaid principal amount, plus post-default interest beginning on December 24, 2010 and accruing at the rate of 18% per annum.

Finally, on December 12, 2008, Stradley executed Note 302719 in favor of the Bank in the principal amount of $50,000.  Note 302719, as renewed, was not immediately paid by Stradley.  (Harmon Aff., ¶¶ 72-74.)  However, the Bank's own records show that the entire principal amount for Note 302719 was paid in full as of July 23, 2010.  (*Id.*, ¶ 76 & Exh. 19.)  And defendant testified that this loan "had been paid off."  (Stradley Dep., at 21.)  This

uncontroverted fact belies plaintiff's attestation that under Note 302719 the total indebtedness includes "Two Thousand Four Hundred Seven and 75/100 Dollars ($2,407.75) in post-default interest from December 24, 2010 until January 20, 2012 at a rate of 18%." (*Id.*, ¶ 76.)[10]  Plaintiff does not explain how, if the principal balance were $0.00 as of July 23, 2010, more than $2,000 in post-default interest could have accumulated on that zero balance beginning five months after the loan was paid in full.  As plaintiff's records undercut its claims for relief on Note 302719, no damages will be awarded on Count Seven of the Complaint.

## B.        The Continuing Guaranty and Overdraft Protection Agreement.

In addition to its claims based on the seven promissory notes executed by Stradley in his own name, the Bank asserts as Count Eight a claim for breach of contract arising from Loan 300788, and as Count Nine a claim for breach of contract arising from Loan 20032899.  These claims are analogous (albeit not identical) to the others.

Count Eight relates to Loan 300788, which was made by the Bank to non-party Gulf Coast Builders in the amount of $15,000 on December 19, 2007.  (Harmon Aff., ¶ 41; Doc. 1, Exh. K-1.)  To induce the Bank to make that loan, Stradley executed a "Continuing Guaranty" pursuant to which he "unconditionally guarantees the prompt and full payment and performance and promises to pay all of Borrower's … indebtedness," including the promissory note executed by Gulf Coast Builders, "together with all interest and all of Lender's expenses and costs (including, but not limited to, attorney's fees and other costs incurred by Lender to collect the Indebtedness …)."  (Doc. 1, Exh. K-2; Harmon Aff., ¶ 41.)[11]  Loan 300788 was extended, but

---

[10]        Plaintiff makes the same argument in its summary judgment brief, to-wit: "This figure includes No and 00/100 Dollars ($0.00) in principal; Two Thousand Four Hundred Seven and 75/100 Dollars ($2,407.75) in post-default interest from December 24, 2010 until January 20, 2012 at a rate of 18%."  (Doc. 24, at 13.)

[11]        By the terms of the Continuing Guaranty, Stradley expressly waived any right to "notice of presentment for payment, demand, protest, dishonor, default, and nonpayment pertaining to the indebtedness and this Guaranty."  (Doc. 1, Exh. K-2, at ¶ 5.)  As such, the Bank was not required to plead or prove any such notice to Stradley in order to trigger his obligations as guarantor.  *See Sharer v. Bend Millwork Systems, Inc.*, 600 So.2d 223, 226 (Ala. 1992) ("The language of the guaranty is controlling in determining whether the holder of the guaranty is under a duty to notify the guarantor of a default by the principal, and notice need not be given when the terms of the guaranty expressly dispense with the need for it."); *BP Products North America Inc. v. Merritt Oil Co.*, 812 F. Supp.2d 1297, 1304 (S.D. Ala. 2011) (similar).

never paid by Gulf Coast Builders or Stradley upon reaching maturity.  (Harmon Aff., ¶ 43.)
The Bank's records reflect that the present unpaid principal amount on Loan 300788 is
$14,963.09.  (*Id.*, ¶ 46 & Exh. 10.)  The underlying note reflected that "interest will accrue at the
rate of 18.00% per year on the balance of this note not paid at maturity, including maturity by
acceleration."  (Doc. 1, Exh. K-1.)  On that basis, plaintiff seeks recovery of the unpaid principal
balance, plus post-default interest beginning on December 24, 2010 and accruing at the rate of
18% per annum.

Count Nine concerns a certain Overdraft Protection Agreement executed by Stradley in
the Bank's favor on June 5, 2003 with respect to account number 20032889.  (Harmon Aff.,
¶ 78.)  As modified, that Agreement protected Stradley from overdrafts by furnishing him with a
line of credit up to a total amount of $5,000, subject to a finance charge of 18%.  (*Id.*,
¶¶ 79; Doc. 1, Exh. L-2.)[12]  The Bank's records do not show the full borrowing and payment
history on this Agreement; however, they do reflect that the principal amount owed as of January
18, 2012 was $2,809.10.  (Harmon Aff., Exh. 20.)  There is no indication in the record as to the
outstanding principal balance on any other date.[13]  Similarly, there is no evidence and no
indication that Stradley ever repaid any of the January 18, 2012 balance owed under the
Overdraft Protection Agreement.

---

[12]     The Bank indicates that "[p]ursuant to the terms of Agreement 20032899, interest
accrued after default at a rate of eighteen percent (18%)."  (Harmon Aff., ¶ 81.)  This statement
is not precisely aligned with the text of the Agreement, which made no reference to a default
interest rate.  Rather, the Agreement was worded in terms of a finance charge at an APR of 18%
which "begins to accrue immediately when credit is extended to you under your Overdraft
Protection Line of Credit.  No time period exists within which any credit extended may be repaid
without incurring a FINANCE CHARGE."  (Doc. 1, Exh. L-2, ¶ 4.)  So plaintiff's
characterization of the 18% charge as a post-default interest rate is not entirely accurate, and the
Court construes it as a finance charge accruing at the annual rate of 18%.

[13]     This omission is significant because the Bank purports to be seeking "post-default
interest from December 24, 2010 until January 18, 2012 at a rate of 18%."  (Doc 24, at 13.)
Leaving aside the questionable "post-default interest" terminology, this statement is problematic
because the record is devoid of evidence that there was any positive balance on Stradley's
overdraft protection account as of December 24, 2010, or at any date prior to the January 18,
2012 snapshot presented in plaintiff's summary judgment materials.  As such, the 18% interest
rate on the principal balance for Count Nine will run from January 18, 2012, not any earlier date.

### C.      *Liability and Damages.*

The foregoing record facts are sufficient to demonstrate Stradley's liability, and the Bank's entitlement to summary judgment, on the breach of contract causes of action presented under Alabama law for each of Counts One through Five.  *See generally National Sec. Fire & Cas. Co. v. DeWitt*, --- So.3d ----, 2011 WL 5607802 (Ala. Nov. 18, 2011) ("In order to establish a breach-of-contract claim, a plaintiff must show (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages.") (citations omitted); *Barrett v. Radjabi-Mougadam*, 39 So.3d 95, 98 (Ala. 2009) (similar).  "A promissory note is a form of contract; therefore, it must be construed under general contract principles."  *Bockman v. WCH, LLC*, 943 So.2d 789, 795 (Ala. 2006).[14]

As to Counts One through Five, the Bank has established via uncontroverted record evidence that it loaned money to Stradley, that Stradley entered into binding, enforceable promissory notes to repay the Bank for those funds, and that he subsequently defaulted on those contractual obligations.  Plaintiff has also shown that it incurred damages with respect to Stradley's breach of each of those agreements, in the form of unpaid principal and accrued post-default interest.  Accordingly, with respect to Counts One through Five, plaintiff's Motion for Summary Judgment is **granted**.  Plaintiff will be awarded the total unpaid principal amount due and owing under Counts One through Five (in the total amount of **$1,275,029.77**), plus post-default interest (as discussed *infra*).[15]

---

[14]      It cannot reasonably be contested that Alabama law applies to the underlying promissory notes and agreements.  The vast majority of those agreements include specific provisions stating that they are governed by Alabama law, and the remaining agreements were made in Alabama.  *See generally Cherry, Bekaert & Holland v. Brown*, 582 So.2d 502, 506 (Ala. 1991) ("Alabama follows the principle of 'lex loci contractus,' which states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction.").  Accordingly, the Court will apply Alabama law to all of the Bank's claims herein.

[15]      The unpaid principal on Counts One through Five consists of the sum of $762,508.21 (Count One), $97,179.19 (Count Two), $233,000.00 (Count Three), $104,192.37 (Count Four), and $78,150.00 (Count Five).

The analysis and outcome are different for Counts Six and Seven.  As previously addressed, the summary judgment record unambiguously reflects that the principal balance on both of the underlying promissory notes was reduced to $0.00 some months before December 24, 2010, which is the date on which the Bank claims post-default interest began to accrue.  Plaintiff has neither argued nor shown how post-default interest accrues on zero-balance loans.  Nor has plaintiff identified any contractual provision providing for the accrual of post-default interest after the principal is paid in full.  Given the uncontroverted evidence that the principal balance owed on Notes 89257 and 302719 is zero, and that the principal amounts due under those notes were paid in full prior to the December 24, 2010 date that the Bank identifies as the starting point for post-default interest, plaintiff can recover neither unpaid principal nor default interest on those Notes.  The only categories of loan-specific damages identified by the Bank in its summary judgment submission are unpaid principal and post-default interest.  (Doc. 24, at ¶¶ 36, 42.)[16] Yet the record refutes any claims for either of those types of damages under Notes 89257 and 302719, inasmuch as (a) unpaid principal balances are zero, and (b) no principal amounts remained unpaid as of the default date designated by the Bank.  Because damages are an essential element of a breach-of-contract claim under Alabama law, and because plaintiff's own

---

[16]     This is true for all nine breach-of-contract claims set forth in the Complaint.  In its summary judgment filing, plaintiff enumerates the amount of unpaid principal and the amount of post-default interest calculated as due and owing under each particular note.  (*See* doc. 24, at ¶¶ 35-43.)  To be sure, those figures do not match the "total indebtedness" amount listed for each note; however, plaintiff does not explain the difference, and makes no showing as to what other amounts it contends are due and owing, and why it contends they are owed.  For example, plaintiff has made no showing of any late fees accrued for any of the Notes, including the amounts of such fees, the reason why they were imposed, and the contractual basis for same.  Likewise, plaintiff has said nothing about pre-default interest accrual, calculation or indebtedness on any of these Notes.  Plaintiff not having asked for those types of damages, much less made an evidentiary showing sufficient to support the award of same, this Court will limit the damages awards to unpaid principal and post-default interest.  *See generally Case*, 555 F.3d at 1329 (noting that a litigant "cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions") (citation omitted); *Doe v. City of Demopolis*, 799 F. Supp.2d 1300, 1310 n.21 (S.D. Ala. 2011) ("Courts are not saddled with the obligation to develop summary judgment arguments for litigants who fail to do so themselves.").  As discussed *infra*, plaintiff will also be awarded reasonable costs of collection as part of its damages in this case, upon a proper showing of the costs incurred and the reasonableness of same.

evidence demonstrates the lack of damages in connection with those promissory notes, plaintiff shall have and recover nothing on Counts Six and Seven.

      With regard to the Continuing Guaranty at issue in Count Eight, the applicable legal standard under Alabama law is similar to those for the promissory note-based claims. *See Eagerton v. Vision Bank*, --- So.3d ----, 2012 WL 1139148, *3 (Ala. Apr. 6, 2012) ("Rules governing the interpretation and construction of contracts are applicable in resolving a question as to the interpretation or construction of a guaranty contract. … Absent fraud in the inducement, an absolute guaranty will be enforced according to its terms ….") (citations omitted); *see also Barnett Millworks, Inc. v. Guthrie*, 974 So.2d 952, 954 (Ala. 2007) (similar). Thus, "[e]very suit on a guaranty agreement requires proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty." *Delro Industries, Inc. v. Evans*, 514 So.2d 976, 979 (Ala. 1987). Plaintiff has adequately shown all elements of breach of guaranty, through uncontroverted proof of the existence of the Continuing Guaranty executed by Stradley, default on the underlying note by Gulf Coast Builders, and nonpayment of guaranteed sums by Stradley.[17] As such, the Bank is entitled to summary judgment on Count Eight in the total unpaid principal amount of **$14,963.09**, plus post-default interest (as discussed *infra*).

      The analysis for Count Nine (concerning breach of the Overdraft Protection Agreement) is similar to that for the promissory note causes of action. Plaintiff's uncontested evidence is that Stradley entered into a valid and binding Overdraft Protection Agreement with the Bank, that the Bank subsequently extended credit to him pursuant to that Agreement, and that Stradley has failed to repay such funds and is now in default under that contract. On that basis, plaintiff's Motion for Summary Judgment will be **granted** as to Count Nine, with plaintiff being entitled to

---

[17]    By the express terms of the Continuing Guaranty, the Bank was not obligated to pursue recovery against Gulf Coast Builders before going after Stradley. (*See* doc. 1, Exh. K-2, at ¶ 4 ("Guarantor's Obligations under this Guaranty are direct and unconditional and may be enforced without requiring Lender to exercise, enforce, or exhaust any right or remedy against any Borrower, co-guarantor, third party, or collateral.").) Such absolute guaranty provisions are enforceable under Alabama law. *See Pilalas v. Baldwin County Sav. and Loan Ass'n*, 549 So.2d 92, 94 (Ala. 1989) (under an "absolute guaranty, which is an unconditional undertaking by the guarantor to pay a debt at maturity if the borrower does not … a creditor may pursue his remedy against the guarantor even without first going against the borrower") (citation omitted); *Vision Bank v. 145, LLC*, 2011 WL 5289070, *4 n.4 (S.D. Ala. Nov. 4, 2011) (similar).

judgment in the amount of the unpaid principal balance on that account of **$2,809.10**, plus the contractual finance charge (as discussed *infra*).

In addition to unpaid principal amounts, as to Counts One, Two, Three, Four, Five and Eight, plaintiff seeks an award of post-default interest at the contractual rate. Each of the promissory notes at issue in Counts One through Five and Eight, at least in their extended and modified form, includes express language that interest would accrue at the rate of 18% per annum on any balance of the note not paid at maturity. The Bank having shown that Stradley breached his obligations under those promissory notes (or continuing guaranty, in the case of Count Eight), it becomes necessary to fix a date certain on which that 18% post-default interest began to accrue. That determination requires examination of a Forbearance Agreement (doc. 1, Exh. D) between Stradley and the Bank, dated June 7, 2010. On its face, that Forbearance Agreement applied to all of the promissory notes at issue in Counts One through Five, as well as the Gulf Coast Builders note guaranteed by Stradley which is at issue in Count Eight. The Forbearance Agreement provided that Stradley was to make monthly installment payments on these notes in the amount of $6,500 on or before the fifteenth day of each calendar month. Upon the conclusion of the forbearance period (*i.e.*, when Stradley failed to make a required payment in a timely fashion), the Forbearance Agreement specified that, as to all of the notes, "interest shall thereafter accrue at the default rate of eighteen percent (18.0%) per annum." (Doc. 1, Exh. D, ¶ 2(a).) The record shows that Stradley failed to make the $6,500 payment due under the Forbearance Agreement on December 14, 2010; therefore, the Bank construed each of the notes to be in default and subject to accrual of post-default interest beginning on December 24, 2010 (or 10 days after the missed payment). This starting point for accrual of post-default interest appears reasonable and is supported by the record. On that basis, post-default interest will be calculated at the agreed-upon rate of 18% from December 24, 2010 until the date of entry of final judgment in this matter.[18]

---

[18]    At present, the total amount of post-default interest on Counts One, Two, Three, Four, Five and Eight is calculated to be **$318,080.43** as of the date of this Order. To reach this figure, the undersigned computed the sum of the unpaid principal owed on the six subject notes ($1,289,992.86), multiplied it by 0.18 (the rate of default interest), and multiplied that figure by 1.3698 years (the amount of time between the December 24, 2010 default date and the date of this Order, or 500 days / 365). Post-default interest will continue to accrue on these claims at the daily rate of **$636.16** from May 8, 2012 until entry of final judgment.

As to Count Nine, the Overdraft Protection Agreement provided for an 18% finance charge running from the date that Stradley accessed his overdraft protection credit line until the amount was repaid.  The summary judgment record shows that, as of January 18, 2012, the balance on the overdraft protection account was $2,809.10.  Because there is no indication as to what the balance was on any earlier date, the 18% interest will accrue from the date of that January 18, 2012 "screen grab" in the summary judgment record.  Thus, at present, the total amount of post-default interest accrued on Count Nine is **$152.38**.[19]

### D.    Attorney's Fees and Expenses.

In addition to the unpaid principal and default interest specified above, the Bank seeks an award of attorney's fees and costs.  "Alabama follows the American rule, whereby attorney fees may be recovered if they are provided for by statute or by contract …."  *Jones v. Regions Bank*, 25 So.3d 427, 441 (Ala. 2009) (citations omitted); *see also Battle v. City of Birmingham*, 656 So.2d 344, 347 (Ala. 1995) (same).  The law is clear that "provisions regarding reasonable attorney's fees are terms of the contracts susceptible to breach."  *Army Aviation Center Federal Credit Union v. Poston*, 460 So.2d 139, 141 (Ala. 1984).

All of the subject agreements and notes included provisions entitling the Bank to recover its reasonable attorney's fees and other collection costs should Stradley default on his repayment obligations.  Typical of these "collection costs" provisions is that found in Note 301300, which included a clause reading as follows: "If I am in default and you have to sue or take other steps to collect or secure this note, I agree to pay your reasonable costs.  If the original amount financed is greater than $300 and you refer this note to an attorney who is not your salaried employee, I agree that these costs include a reasonable attorney's fee."  (Doc. 1, Exh. H, ¶ 12.)  All of the Notes and the Continuing Guaranty contained functionally identical collection cost language.  And the Overdraft Protection Agreement included a clause stating, "You agree to pay all costs and expenses of collection, including a reasonable attorney's fee (only if your account balance exceeds $300.00 and not to exceed 15% of your account balance), and the court costs incurred in

---

[19]    To reach this figure, the undersigned multiplied the $2,809.10 principal balance by 0.18 (the rate of the finance charge), and multiplied that figure by 0.3013 years (the amount of time between the January 18, 2012 screen grab date and the date of this Order, or 110 days / 365).  Finance charges will continue to accrue on Count Nine at the daily rate of **$1.38** from May 8, 2012 until entry of final judgment.

the collection of any sum owing under this Agreement."  (Doc. 1, Exh. L-1, ¶ 8.)  By the plain terms of these agreements, then, the Bank is entitled to recover from Stradley its reasonable fees and costs incurred in enforcement of the Notes, the Continuing Guaranty, and the Overdraft Protection Agreement.  *See generally Willow Lake Residential Ass'n, Inc. v. Juliano*, --- So.3d --- -, 2010 WL 3377701, *11 (Ala.Civ.App. Aug. 27, 2010) ("Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation.").

At this time, however, the record does not establish the amount of the Bank's reasonable attorney's fees and costs of collection for Counts One through Five, Eight and Nine. Accordingly, SE Property is **ordered**, on or before **May 21, 2012**, to file such exhibits, affidavits and legal memoranda that it deems sufficient to establish both the amount and reasonableness of the attorney's fees and costs for which it seeks recovery.  Any response that Stradley may wish to file on the issue of quantifying recoverable fees and costs must be filed on or before **June 4, 2012**, at which time the Court will take the matter under submission.

## IV.    Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1.    Plaintiff's Motion for Summary Judgment is **granted in part,** and **denied in part**;

2.    The Motion is **denied** as to Counts Six and Seven, as to which causes of action plaintiff will have and receive nothing, for want of proof of damages;

3.    The Motion is likewise **denied** as to Count Ten, as to which plaintiff will have and receive nothing because no legal or factual showing has been made that an accounting might be appropriate in this case;

4.    In all other respects, the Motion is **granted**;

5.    SE Property has established its entitlement to a judgment against Stradley in the amount of **$1,292,801.96** for unpaid principal, plus **$318,232.81** in post-default interest accrued through and including the date of this Order, plus additional prejudgment interest accruing at the rate of **$637.54** per day, from May 5, 2012 until the date of entry of final judgment in this matter; and

6.    SE Property is **ordered**, on or before **May 21, 2012**, to file a memorandum and exhibits establishing the amount and reasonableness of the attorney's fees and costs for which it seeks recovery in this action.  Any response that Stradley may

-15-

wish to file on the issue of recoverable collection costs must be filed on or before **June 4, 2012**.


DONE and ORDERED this 7th day of May, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE
